The first case we will call is United States of America XREL More&Company v. Majestic Blue Fisheries et al. Mr. Naughton, you will be arguing for the appellant. Thank you, Your Honor, and good morning. My name is Clay Naughton. I'm appearing on behalf of the appellant, the United States of America XREL More&Company PA.  Very well, if it pleases the court. More, the appellant in this case, appeals the district court's dismissal of its claims under the FCA related to appellee's conspiracy to violate the Vessel Documentation Act for the purpose of fraudulently obtaining United States documentation and fishing licenses for two Korean fishing vessels. The district court dismissed More's claims based on the FCA's public disclosure bar, finding that its claims had been publicly disclosed in FOIA documents requested by More and through the news media. Where did the district court go wrong? Well, Your Honor, the district court went wrong where it found that More's claims were substantially the same as the allegations and transactions disclosed in the FCA qualifying sources. And that's because an essential element of the fraud claimed and alleged by More was that non-citizens do not exercise control over the LLCs. Wasn't that disclosed in the articles? No, Your Honor, I don't believe it was. The articles focused on mutiny at sea, abuse of the crew, and things of that nature. It also talked about the captains being paper captains. But that goes to control over the vessels. So under the United States Coast Guard rules, a United States vessel must be in the control of a U.S. captain. So you're saying that the disclosures had nothing to do with the management or control of the LLC, just the vessel, correct? Correct, Your Honor. The disclosures all focused on a disgruntled captain's disclosure to the news media about a mutiny at sea where his rights as a U.S. captain were trampled on. Those all implicate things like U.S. Coast Guard regulations. But they don't go to the essential element of the fraud alleged here by More, which has to do with control over the LLCs. That information only came from More's independent investigation and depositions of Joyce Cam, who was one of the principals of the LLCs, by Jergen Unterberg, who was the managers of the LLCs, and by a Dong Wong employee. But the bill of sale was included in the FOIA exhibits, wasn't it? Wasn't that sufficient to put that out there as a public disclosure? That's correct, Your Honor. The bill of sale was out there. It was a FOIA disclosure, although we dispute that FOIA disclosures under the new PPAC would be considered as reports, given that the new PPAC came into effect prior to the Schindler Elevator case, and yet Congress didn't have a chance to consider the court's ruling there when it came out with the new PPAC rules. And Schindler Elevator actually was looking at the old version of the PPAC. But even if the court were to consider that bill of sale that says $10 for the sale of the vessel, the court can take judicial notice that bills of sale very frequently do not include the actual purchase price of the vessels here. And, in fact, we introduced other independent information that there was a purchase and sale contract where the vessels were purportedly sold to the LLCs, the sham LLCs, for $4.4 million. What if we find that these are substantially the same allegations or transactions? What about the original source aspect? Yes, more would also come under the original source exception. Now, under the new original source exception, the relator only is required to have knowledge that is independent of and materially adds to the public disclosures. What's your contention as to what materially adds really would mean in this context? Well, the materially adds would mean that we provided an essential element here. We provided something that the government would have never been aware of before, which is to say that the LLCs were actually controlled by Korean citizens. Notwithstanding the fact that... But didn't the newspaper, not the newspaper, but didn't the articles, the trade journal articles indicate that they were under the management of Don Juan Corporation?  And says that, which somewhat implicates that the owners were the daughters of a Korean manager of a fishing company. However, that information is not printed on the Internet anywhere. That information comes from a blog podcast. It was a recorded cell phone conversation, 66 minutes long. It was then uploaded to the Internet. What the appellees have done is they've gone on the Internet, they've listened to the entire 66-minute long tape, they've found a relevant portion, they had it transcribed and they presented it to the court. But under Graham and the other precedents of this court, that, we contend, is not reasonably accessible. That isn't something that the federal government would look for. The federal government isn't going to... And didn't the district court say that that wasn't sufficient? That wasn't... Correct, Your Honor. The district court found that the bitter end blog and that the CNNI report that states that it's unvetted were not, in fact, sufficient FCA disclosures. So what Moore has done is actually alerted the government to the essential element of the fraud here. This is information like that Dong Wong controlled the LLC's only bank account. That was learned from the depositions and from nowhere else. That the Kim sisters relied entirely on their Korean citizen father to manage the LLC's. That was disclosed nowhere else in even the purported public records. Information like that the Kim sisters never received any money from the LLC's and also only put in $50 for the LLC's even though they owned a $4.4 million dollar ship each, purportedly. Also that Juergen Unterberg, the LLC's manager, never had access to the bank accounts, never had access to the accounting, never ran any of those things. Those were all essential elements of this claim that materially added to the government's knowledge that allow the government now to proceed in a fraud claim against Dong Wong and its co-conspirators, Majestic Blue and the others here. The jurisdictional issue here, the issue as to whether this is jurisdictional or not, you address that? Yes, Your Honor. There is some question as to whether the new PPAC is still a jurisdictional bar. And that comes from the fact that Congress has actually specifically removed the jurisdictional language and replaced it with something very general. Now, at least two federal courts of appeals have considered whether the PPAC is still jurisdictional after what Congress has done to it. Was it the Fourth and the Eleventh? That's correct, Your Honor. It's the Fourth and the Eleventh Circuit. One case was May v. Purdue Pharma LP and the other was Osheroff v. Humana, which is an Eleventh Circuit court. Does it really matter here? How would that impact? Well, the way it would matter in this case is that the burden would have been shifted. And it's really unclear from what the court said in its order how the court interpreted the burden shifting, how the court made these findings related to things outside the pleadings. So should we remand for the court to put the burden on the FLE here? Well, I think that's one possibility. But more importantly, I think the overarching issue is whether or not the allegations that Moore makes are substantially similar to anything in the public record. So you're saying it really doesn't make a difference? Well, I'm saying that the court could rule based on the jurisdictional nature, but the court would then have to reconsider the same exact issues that it's already gone through. And the court may very well be able to take judicial notice of certain things outside the pleadings, like news articles and things of that nature. However, judicial notice under Federal Rule, I think it's 201, generally requires notice to the parties and allows the parties to be heard on whether or not these are, in fact, issues which should be judicially noted by the court. And to reiterate, Your Honor, the FOIA documents almost exclusively address the issues of control. But what is there in the amendment to the statute that you submit pulls these FOIA records outside of the statute, the public disclosure? Well, in general, Your Honor, the congressional intent in amending the statute was to reduce the public disclosure bar, to allow more FCA complaints and relators to come forward to be able to bring their claims, and also to enlarge the original source exception. Now, given everything in the statutory language that Congress has done to expand, for instance, making federal court litigation no longer come under a FCA qualifying disclosure, things of that nature, if Congress had understood that FOIA requests would actually be considered as FCA qualifying, they would have addressed that issue. But the Schindler elevator case came out after Congress amended, so they didn't understand at that point that the federal report wording would include the FOIA requests. And also, FOIA requests aren't truly public information. I mean, an individual goes and makes a FOIA request, and then that information is not normally generally disseminated to the public at large. Thank you. Thank you, Your Honor. Mr. Salcido, am I pronouncing that correctly? Yes, you are, Your Honor. Thank you very much. I'm Robert Salcido here on behalf of Apple East. This is precisely the type of case that, at least since 1943, Congress always intended to be barred under the False Claims Act public disclosure bar. The district court here was exactly correct in dismissing the action. Was the district court correct in dismissing it for lack of jurisdiction? Well, the court moved in two parts on that. Certainly the court did dismiss the action under 12b-1. The interesting issue there, just a few weeks ago, this court issued an opinion on the public disclosure bar, United States XRL Judd versus Quest Diagnostics. And there this court wrote, the False Claims Act public disclosure bar, quote, the price courts of jurisdiction over QUTAM actions when irrelevant information has been entered the public domain through certain channels, citing Supreme Court's decision in Graham. This court continued, this is true both before and after the Affordable Care Act amended the False Claims Act. There's language there to indicate that this circuit would still see even the post-amendment False Claims Act as jurisdictional. Now, that's only a statement of opinion. That wasn't a whole thing, though. That's dicta. Well, it was dicta, and it wasn't a considered elaboration. But it's squarely presented here. How does the language that Congress enacted show the clear intent that this be a jurisdictional provision? Well, because it uses the word shall. So it informs the court that if the circumstances satisfying the public disclosure bar are satisfied, that the court shall dismiss the action. At least a couple courts have indicated. We cite them in a brief, United States XRL Blue Champ and Academy Training, and also in the Southern District in New York. Let's get to the heart of the matter. Where in the disclosures is there reference to the management ownership control of the LLC? Yes. Isn't that really a key distinction with respect to what was produced by Moore versus what was already out there? Yes, Your Honor, and I'll address that. But just to address Judge Venaske's question more fully in terms of the jurisdictional component, and all I wanted to add there because it also addresses Appellant's point, that it really doesn't matter whether it's 12B1 or 12B6. And the reason it doesn't matter is under 12B6 you assume the facts of the complaint to be true. We want that here. Because the complaint itself states that through governmental material, and this gets to your question, Judge Rendell, through the governmental material, the actual allegations or transactions of this case were publicly disclosed. The reason why that's true is the relator relies on two sources of material. One is certificates of documentation which makes the representation that the LLCs exercise control over the vessels. That was obtained through FOIA. That's the governmental reports that were obtained through FOIA. Now, the key there. How about the control of the LLC? Where is that referenced? And that's one of the key certifications here is the management and control of the LLC itself. Yes. So we have a number of documents that get into the control of the LLC. One is we have the e-mails from the Coast Guard questioning whether the ownership and control requirements. But a question is not an assertion. Okay. So we have that. We also have the news media articles which reference mutiny. Those articles reference mutiny and pollution. Yes. Where do they reference the ownership of the LLC? I don't even think. Is that referenced at all? It says that there is ownership by U.S. citizens. Of the vessel? Of the vessels, yes. Okay. So where is there reference to the ownership of the LLC? Well, ownership of the LLC, we get that through inference. Through inference? Yes. And, Your Honor, what's important here, whether we look at the Judd case, the Third Circus decision in that case, the critical language here is substantially the same, not identical to the public disclosure. Well, but how about materially? Let's assume substantially the same. Although, you know, you look at someone, two people, and you say, well, they're substantially the same as compared to substantially similar, which is the prior version. I'm not sure exactly how substantially the same is or isn't, you know, a more stringent standard. But let's assume that they're substantially the same allocation of transactions. How about the materially alter aspect? Materially add. I mean, materially add. The brief of your colleague at page 37 to 39 recounts numerous facts that are brought forth in all these depositions and independently obtained by Moore. How do they not materially add? Because they're duplicative of what's in a public domain. Well, that's conclusory. That's conclusory. They're duplicative. And the district court said they're duplicative. How so? Do you dispute those additional things that are noted in the appellant's brief? Well, I have no doubt that they're true. But here's the reason why it doesn't matter from a materially add standpoint, Your Honor. One is with respect to what's considered for purposes of the original source standard under the False Claims Act, you can take into account all information that's in the public domain under that standard, not just those that are listed under E4A. So you can take into account the materials that were disclosed in that court proceeding as material that when you compare, does the Quaytown complaint materially add to what's in the public domain? It's identical to what's in the public domain because it's identical to the news articles. It's identical to the FOIA responses. It's identical to the court proceedings that were decided. Did the public disclosure disclose that Jane and Joyce Kim never paid any portion of the $4.4 million purchase price of the Majestic Blue? In the court proceeding, yes, Your Honor. So you're saying anything that was disclosed in the court proceeding precludes more from being an original source? Absolutely. And the reason you have statutory language there, it's at page 22 of our brief, which goes over the new language. It distinguishes between two types of original sources. The first type of original source are the true whistleblowers. Those are the whistleblowers who voluntarily provided the information before the- It's only the proceedings where the government is a party. Isn't that correct? No, it's totally-it doesn't matter whether the government is a party or not. This is between the defendants and the relator. So you have the first type of original source, those who voluntarily provide the information to government for the public disclosure, and that's limited to public disclosures that occur-it's straight from the statutory provision-public disclosures that occur under E-4A. When you look at the second type of-and the relators never claim that they qualify under that prong. Clearly this was out in the news media before the wrongful death action started. When you look at E-4B, the second type of whistleblower, it's not limited to public disclosures that occur in E-4A. It says publicly disclosed allegations or transactions. Now this court, back in the United States Exero Atkinson case, always, for original source analysis, took into account all information that was publicly disclosed, not just those listed in E-4A. Apparently Congress noted that and went and revised the statute in 2010 and kept that distinction in the statute. So for purposes of analyzing original source, you look not just at all the governmental reports. And the government reports contain the alleged lie, that is, that the LLC is controlled, and the alleged truth, which, again, we have to assume the relator's complaint to be true. The relator's complaint in paragraphs 62 to 64 says clearly the e-mails they obtained from FOIA disclosed that Don Juan had operational control. So if under 12B-1, a facial attack to jurisdiction, or 12B-6, where you have to assume the facts of the complaint to be true, under either of those scenarios, this is precisely the type of action that Congress always intended to bar. Let me ask you a question about the fact that the PPACA has abrogated Stinson, correct? And the post-PPACA public disclosure bar says the court shall dismiss an action or claim under this section unless opposed by the government if substantially the same allegations as alleged were publicly disclosed in a federal criminal, civil, or administrative hearing in which the government or its agent is a party. Isn't that correct? Yes. So I'm not sure why you say that everything that was disclosed in Moore's litigation would apply here. The reason for that, Your Honor, and it's on page 22 of the brief, that's exactly right. That's what E-4A says. So then you get to the original source provision. It says, for purposes of this paragraph, original source means an individual who either, one, prior to the public disclosure under subsection E-4A has voluntarily disclosed to the government the information on which allegations of transactions in this claim are based. So that type of relator, you're limited to disclosures in E-4A, which includes, as the court just read, federal, criminal, civil, administrative hearings in which the government or an agent is a party. Relator doesn't say that prong that the original source exception applies. So we move to the second type of original source. There, as you can see, it's not limited to public disclosures in E-4A. It instead says who has knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions. Now, when you look at this circuit's opinion in I-6S Roe v. Deasek v. Quito administrators, and you also look at this court's decision. You're saying the publicly disclosed on the original source means something different from publicly disclosed, you know, as it is? No, what I'm saying, Your Honor, is Congress distinguished in original sources here, in the original source provision, between the first prong, which is limited to, and there's a logical reason for it, which is limited to the public disclosures that are E-4A, and the second prong, which expressly doesn't limit it in such a way. The reason for that, even though Congress didn't have legislative history behind it, but understanding the full legislative history behind the public disclosure bar, is that the type of original source described in E-4B1, the true whistleblower, who discloses it to the government before there's been any public disclosure, so it really is the whistleblower who breaks the conspiracy of silence. Congress essentially says that those people are permitted to proceed, notwithstanding the fact that this information is in the public domain, unless this narrow category of public disclosures exists. It gave less protection to a second type of qui tam relator, who is less favored. That is, not the person who's the original source, not the person who broke the conspiracy of silence, but what Congress is saying, there is anything in the public domain that includes these allegations or transactions, will bar the relator unless the relator, independent of and materially adds to those allegations. It makes perfect sense why. The government is entitled to 100% of the recovery. If there is a recovery, when the qui tam plaintiff is barred from the action, the qui tam plaintiff participates, the government has to share up to 30%. Congress is trying to figure out what are the right circumstances under which we should take taxpayers' money and give it to someone who repeats it's already in the public domain. The answer is, is only when they add to that information. And under E4B2, the list is more expansive in terms of the qualifying public disclosures. And again, it's what this court has always held in Atkinson and later in ZZAC, and Congress picked up on it when they amended the statute. And clearly, the relator's action, even without this interpretation of E4B, the original source provision, it's still consistent with this court's decision in Judd, which was issued just two weeks ago, which states that with respect to materially adds, that the action has to state a new fraud. Here again, the lie was in the public domain, according to the relators, through the certificates of documentation, and the truth was in the public domain. As they articulated in paragraph 62 through 64 of their complaint, where they alleged that it revealed true nature that Don Juan actually controlled the entity. Finally, with the original source as well, they never qualified for independent knowledge under this court's authority. The reason why that's true is under United States Ex Rel Mystic versus Housing Authority of Pittsburgh, what the court said through Judge Alito was that the relator cannot have independent knowledge when the relator obtains a critical element, that is the misstated facts from the government itself. Now that was also where the qualifying public disclosure was FOIA. Longstanding authority of this court, the Supreme Court said in Chandler that a report, a FOIA is a governmental report, and that has always been the law of the circuit. So the contention of the appellant is that the independent knowledge came through these depositions, not from the government. Well, their complaint has certificates of documentation as containing the alleged lie. That came through indisputably through FOIA. And under Housing Authority of Pittsburgh, when that comes through the government through a FOIA response, then a relator cannot have independent knowledge. Thank you. Thank you very much.  Thank you, Your Honors. Would you please address the conversation I was having with your colleague about the original source and the nature of public disclosure for that purpose as compared to for the public disclosure bar itself?  Thank you, Your Honor. Previously, the version of the statute, the FCA's original source rule, required that a relator have direct and independent knowledge of the information on which the allegations are based. There was no limitation there to public disclosures. Congress amended that original source rule to now require that original source need only have, quote, knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions. Now, the court interpreted the old statute, which didn't specify public disclosure, to mean that anything that was disclosed out there, even if it wasn't FCA qualifying, might be taken into consideration. However, the new version of the original source rule specifies publicly disclosed allegations. Now, what the appellee would like the court to say is that using the word publicly disclosed, even though it's defined throughout this statute in a very particular way, shouldn't matter. And that the court should just go out and just go looking for other non-FCA particular public disclosures in making a determination as to original source. So you're saying when they use the term publicly disclosed allegations or transactions for one purpose and then use that term again, it has the same meaning and it's not broader? Exactly, Your Honor. That is exactly correct. And the decisions which the appellee is relying on, the Atkinson's decision, is obviously interpreting the former statute. The district court actually does, I believe the district court actually states on this, that there is not a current Third Circuit ruling on the original source interpretation, but it goes by Atkinson, which is the previous holding, not taking into account the new language under the statute. Now, the only other issue that I wanted to address was something that was raised where there was a contention that the news media articles actually disclose the false set of facts. Now, under ZZIC, you have the allegations and transactions of fraud only if you have the X and the Y, the X being the true statement of facts and the Y being the false statement of facts. What we have that is publicly disclosed is only the false statement of facts here. Now, for instance, the articles do say that you need a U.S. captain to meet the requirements of the law. That's a true statement. That is totally true. And they actually do go out and get a U.S. captain. The articles talk about the fact that the crew is made up of foreign seamen except for the captain. That's okay. Most of these boats do have all foreign seamen except for the captain. They're fishing in the South Pacific. That's where they draw their labor pool. The articles say that they actually say that the vessels are 100% owned by United States citizens. They further perpetrate the fraud. The article says that the vessels are operated by Dong Won Corporation, a South Korean corporation. Correct. It does say that they are operated by the Korean company, but it says that they are actually owned by the U.S. owners and that they, quote, unquote, meet the letter of the law. That's a direct quote from one of the articles. These articles are saying Dong Won is managing the vessels and overstepping its management because it's displacing the U.S. captain's rights on board. And, therefore, it's mutinous, and, therefore, the U.S. Coast Guard should step in, and, therefore, all of these things. This is criminal. Captains should be vindicated, et cetera. The articles also say that this is not a flag of convenience situation. In other words, the U.S. flag is being flown in a true and real way. It's not a flag of convenience situation. But none of the- What you're saying is would you refer to the appendix? Do you have the appendix pages for what you're talking about now? Your Honor, I'm not sure that I do, but they are all specifically cited in our brief. Okay. And those are at page 32 where we address many of the statements of flag of convenience, et cetera. That's appendix page 725.  All right. Thank you, Your Honor. And, again, none of these articles, none of the FOIA documents, address the true statement that More and Company reveals, which is that Jane and Joyce Kim are shills and are acting as straw people for Korean ownership of these vessels. Does the Court have anything else? I have no other questions, Judge. Thank you very much. Thank you very much. The case was well argued. We'll take it under consideration. We'll call the next case. 84, Mining Company.